IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

BRIAN C. PODWINSKI,

Debtor(s).

CASE NO. BK19-41937-TLS

CHAPTER 7

ORDER

This matter is before the court on the amended motion by creditors Charles S. Tomek and Tadd Delozier to extend time to object to discharge, challenge the dischargeability of specific debts, and file an adversary proceeding (Fil. No. 48) and objection by the debtor (Fil. No. 57), and on Tomek and Delozier's motion to approve compromise and enforce settlement (Fil. No. 52) and objection by the debtor (Fil. No. 58). John A. Lentz represents the debtor, and Michael W. Milone, David J. Koukol, and Tyler A. Masterson represent Tomek and Delozier. Instead of holding a trial on the motions, the parties submitted them on stipulated facts and written arguments. All of the materials have been received and the matter is now ready for decision.

For the reasons stated below, the motions are denied.

I.    Background

The debts at issue stem from loans made by Tomek and Delozier to Barrel Aged Labs, Inc., and guaranteed by the debtor. Tomek filed a claim in the debtor's bankruptcy case for $141,017.90 based on a stipulated judgment against Barrel Aged Labs and the debtor in the amount of $134,125.00 plus post-judgment interest. The judgment was entered in the District Court of Lancaster County on August 16, 2019. The debt owed to Delozier has not been reduced to judgment, but he filed a claim for $269,064.00, based on a loan agreement dated April 20, 2018, for $250,000.00 plus interest at 6.5 percent.

The debtor filed this Chapter 7 petition in November 2019, and the deadline for objecting to discharge or challenging the dischargeability of a debt was set for March 23, 2020. Because the parties were negotiating terms to settle the Tomek and Delozier claims as the March 23rd deadline approached, Tomek and Delozier filed an unopposed motion requesting a 90-day extension of the discharge/dischargeability deadline, which was granted and gave them until June 21, 2020, to file such an action.

In the meantime, the parties continued to discuss a settlement. The parties have different perspectives on the result of those discussions. According to Tomek and Delozier, a settlement was reached and they relied to their detriment on this fact to let the dischargeability deadline pass without filing an adversary proceeding. According to the debtor, the finer points of the settlement terms were still being discussed as of the dischargeability deadline and nothing had been finalized. When counsel for the debtor realized the deadline had passed, he informed counsel for Tomek and Delozier and ended settlement negotiations. That news blindsided Tomek and Delozier's attorneys

and prompted the immediate filing of the motions to extend the discharge/dischargeability deadline once again and to approve the settlement purportedly reached by the parties.

At the court's direction, the parties filed a joint preliminary pretrial statement. However, the court noticed that the parties did not include any substantive uncontroverted facts and they listed each other's attorneys as potential witnesses. Before scheduling a pretrial conference, the court directed the parties to meet and confer as to whether the listed attorneys were indeed necessary witnesses and, if so, whether that could lead to disqualification of the attorneys, as well as to come up with a list of relevant facts they all could agree to. The debtor then filed a motion for judgment on the pleadings and alternative request for determination as to equitable tolling of Rule 4007(c) or Rule 4004(a) deadlines. The court denied the debtor's motion, noting that the creditors' reliance on equitable grounds for extending the filing deadline requires evidence of facts that prevented the creditors from timely requesting an extension. The parties then opted to submit the matter for decision on stipulated facts and briefs.

Specifically, the parties have agreed to the following stipulated summary of facts (Fil. No. 79):

1. The parties engaged in a series of settlement negotiations, primarily by e-mail, from approximately January 24, 2020, through approximately June 24, 2020.

2. The parties' settlement negotiations focused on whether Tomek and Delozier's claims against Podwinski would be determined non-dischargeable and repayment of those claims over time through a voluntary payment plan.

3. On April 22, 2020, Tomek and Delozier reduced to writing an outline compiling the settlement terms the parties discussed during negotiations and submitted the compilation to Podwinski through his counsel for approval.

4. On May 14, 2020, Podwinski's counsel e-mailed Tomek and Delozier's counsel stating that he was still waiting on final approval of the compiled settlement terms, but believed "the terms have all been agreed to through months of emails but I want to get his approval prior to telling you that we have a deal and let's do a stip."

5. On June 16, 2020, Podwinski's counsel e-mailed Tomek and Delozier's counsel stating: "Sounds like Brian's good with the terms as outlined . . ." and mentioned "just a few considerations/suggestions for stip[.]"

6. The "considerations/suggestions" Podwinski requested involved a repayment start date, Podwinski's confirmation that he had obtained a life insurance policy under the outlined settlement terms, default triggers/terms, and transfer of any shares held by Tomek and Delozier in Barrel Aged Labs, LLC, back to Podwinski "after all payments contemplated are made."

7. Regarding these "considerations/suggestions":

   a. The parties agreed by e-mail on June 17, 2020, to a transfer of any shares held by Tomek and Delozier in Barrel Aged Labs, LLC, back to Podwinski after all settlement payments contemplated were made, with an additional $750 payment to Delozier.

   b. The parties agreed by e-mail on June 17, 2020, that Podwinski would provide confirmation that he had obtained a life insurance policy under the outlined settlement terms.

   c. The parties agreed by e-mail on June 18, 2020, to a repayment start date of November 1, 2020, however, Podwinski still expressed concerns regarding default triggers and terms.

8. On June 24, 2020, Podwinski's counsel e-mailed Tomek and Delozier's counsel and inquired as to whether Tomek and Delozier had accepted the new terms tentatively in the context of timing relative to a hearing on Podwinski's motion to avoid lien.

9. Tomek and Delozier's counsel replied by e-mail on June 24, 2020, confirmed the parties were tentatively settled, and stated the parties should inform the court of their settlement and ask for additional time for "finishing touches." At this time, no draft of an actual settlement agreement had occurred.

10. On June 24, 2020, Podwinski's counsel sent an e-mail to Tomek and Delozier's counsel stating Podwinski was no longer interested in settling the matter with Delozier or Tomek.

11. Debtor discovered the creditors had missed their deadline on June 24, 2020, and notified their counsel that the debtor did not desire to continue settlement negotiations.

12. The parties then filed the following pleadings:

   a. June 24, 2020 – Tomek and Delozier filed a motion to extend the time for filing actions to determine Podwinski's debts non-dischargeable;

   b. June 25, 2020 – Tomek and Delozier filed an amended motion to extend the time for filing actions to determine Podwinski's debts to be non-dischargeable;

   c. June 25, 2020 – Tomek and Delozier filed a motion to approve the compromise and enforce the settlement they contend the parties reached;

   d. July 17, 2020 – Podwinski objected to Tomek and Delozier's amended motion to extend time and motion to approve the compromise;

   e. August 31, 2020 – the parties submitted a joint preliminary pre-trial statement restating their respective positions;

  f. September 14, 2020 – Podwinski filed a motion for judgment on the pleadings regarding Tomek and Delozier's motions, which the court denied by written order on October 19, 2020.

  13. Creditors prepared and emailed a "Stipulated Settlement Document" on July 15, 2020, based on what creditors' counsel understood the parties had agreed upon, but this was after the June 24, 2020, notice from Podwinski's counsel that the debtor was no longer interested in settling the matter.

  14. The parties agree the compiled e-mails, pleadings, and other documents attached as Exhibit A shall be offered and received without objection for purposes of resolving the pending motions to extend adversary deadline, motion to approve and enforce compromise, and objections thereto.

 Tomek and Delozier believe these facts establish that the parties had reached an enforceable agreement to settle the treatment and payment of the debts at issue and the debtor reneged. They argue that waiver, equitable estoppel, promissory estoppel, and tolling prevent the debtor from walking away from the agreement because they relied to their detriment on the debtor's repeated representations that the matter was essentially settled, and his attempt to take advantage of an inequitable situation that he created should not be condoned.

  II. <u>The motion to approve compromise and enforce settlement</u>

  Under Federal Rule of Bankruptcy Procedure 9019(a), the court may approve a settlement on motion by the trustee after notice and a hearing. "[T]he standard for evaluation is whether the settlement is fair and equitable and in the best interests of the estate." *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015) (internal citations omitted). When assessing the reasonableness of a settlement, the court must consider:

> (A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 279 (citations omitted).

  In order to approve the purported settlement, the court must first determine whether a settlement agreement exists by applying the substantive law of the forum state – Nebraska. *United States v. Nebraska Beef, Ltd.*, 901 F.3d 930, 934 (8th Cir. 2018); *Gosiger, Inc. v. Elliott Aviation, Inc.*, 823 F.3d 497, 502 (8th Cir. 2016); *Oriental Trading Co., Inc. v. Yagoozon, Inc.*, No. 8:13CV351, 2016 WL 917903, at *2 (D. Neb. Mar. 10, 2016).

> To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. It must identify the

subject matter and spell out the essential commitments and agreements with respect thereto.

*Acklie v. Greater Omaha Packing Co.*, 944 N.W.2d 297, 306 (Neb. 2020) (citations omitted).

"A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract." *Schulze v. Rasmussen*, No. A-19-901, 2020 WL 4972274, at *6 (Neb. Ct. App. Aug. 25, 2020) (citing *Gibbons Ranches, L.L.C. v. Bailey*, 857 N.W.2d 808 (Neb. 2015)). "A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances." *Id.* (citing *Linscott v. Shasteen*, 847 N.W.2d 283, 289 (Neb. 2014)). "The determination of the parties' intent to make a contract is to be gathered from objective manifestations – the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction." *Id.* (citing *Linscott* at 289-90).

Here, the parties negotiated for five months to formulate an acceptable settlement. By April 22nd, counsel for Tomek and Delozier compiled the results of the settlement discussions from the previous three months into a detailed email to the debtor's counsel, for each side to discuss with their respective clients. *See* the emails attached to the Stipulated Summary of Facts (Fil. No. 79 at 47-52). As of June 2nd, the debtor was still considering the list of terms and had not yet approved them. *Id.* at 53 and 55. According to his attorney, the debtor was concerned about the feasibility of the proposed repayment agreement. *Id.* at 55.

The discussions picked up steam in the middle of June and the parties deliberated the finer points of a repayment plan. The parties discussed specific aspects of the repayment structure, proof of an insurance policy on the debtor's life as security for the debt, and terms for the release of Delozier's interest in Barrel Aged Labs. By June 18th, the parties had agreed the debtor could begin making payments on November 1, but the debtor wanted to include a contingency provision to allow him to cure any payment defaults. *Id.* at 79. By the morning of Friday, June 19th, counsel for Tomek and Delozier agreed to include such a provision and asked for the opportunity to discuss its terms with his clients. *Id.* at 89.

There is no evidence in the record of the creditors' response to the request for a default provision. The next communication appears to have been on the morning of Wednesday, June 24th, when counsel for the debtor followed up with counsel for Tomek and Delozier to see whether the parties had tentatively accepted the terms of the deal, because he was facing a deadline for submitting evidence for a hearing the following week on his motion to avoid Tomek's lien. *Id.* at 107. A response that afternoon from counsel for Tomek and Delozier stated that, based on his discussions with his clients, "I believe we are tentatively settled". *Id.* at 117. Approximately an hour later, counsel for the debtor replied to the email, explaining that the debtor was no longer interested in settling because the complaint deadline had expired on June 21st. Counsel for Tomek and Delozier swiftly responded, expressing his disappointment in what he characterized as the debtor's decision "to renege" when the case had been "essentially settled" for weeks, after counsel had relied on the debtor's representations about settling, and while counsel was out of the office. *Id.* at 120. These motions immediately followed.

Based on the evidence in the record, there was no enforceable agreement in place on the complaint deadline of June 21st (or June 22nd, pursuant to Federal Rule of Bankruptcy Procedure 9006(a)(1)(C)[1]). On the 19th, creditors' counsel said he was willing to work on a contingency provision for default and cure, but needed to discuss with his clients what parameters they would be willing to countenance. The correspondence shows this item was important to the debtor because he was very concerned about his ability to make payments on this debt and he wanted assurances of an opportunity to cure any missed payments before he would consent to a settlement. However, counsel for the debtor received no response from Tomek and Delozier's counsel by June 22nd. Under the rules of contract formation, there was no acceptance of the settlement terms by the time the deadline for objecting to discharge or dischargeability expired.

There also does not appear to be a meeting of the minds on that date, as the particulars of the cure provision were still nebulous, so the agreement was far from definite and certain. The court's ability to determine the intent of each party is necessarily limited by the parties' decision to submit the matter on stipulated facts and waive the presentation of live testimony which would have provided some insights into each party's thoughts (as opposed to the words of their attorneys) during the negotiations.

While the evidence demonstrates that the debtor was still willing to settle on June 24th when his attorney contacted creditors' counsel to learn whether the creditors were agreeable to the debtor's proposal – presumably before he realized the deadline had passed – that willingness does not salvage the creditors' position. The point of the negotiations was to avoid litigation over the dischargeability of the debts to Tomek and Delozier. The Bankruptcy Code puts a firm limit on the timeframe in which to bring such litigation by establishing deadlines in Rules 4004 and 4007, deadlines which may be extended only for cause.[2]

Even if the parties' correspondence were to be construed as an enforceable settlement agreement, this court would not approve it under Rule 9019. First, the procedural rule clearly states that only the trustee (or, in certain circumstances, the debtor) may move to approve a settlement. That is not the situation here. In fact, the debtor in this case vehemently objects to the purported settlement. Second, the debtor clearly believes this settlement is not in the best interest of the bankruptcy estate, and he is correct. The four factors for evaluating the reasonableness of a compromise may have favored a timely settlement, when the debtor faced the risk that these debts could be excepted from discharge in an adversary proceeding, but when the creditors let the deadline expire, the debtor had nothing to lose by ending the negotiations and declining to move forward with executing a settlement. The creditors cannot force an alternative result.

---

[1] June 21, 2020, was a Sunday. When the last day of a period for taking action "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

[2] These rules will be discussed in the following section.

III.   The amended motion to extend time

Tomek and Delozier argue that the court should extend their deadline to file an adversary proceeding[3] to object to discharge[4] and determine dischargeability of the debts, and that Podwinski should be barred from asserting a statute of limitations defense on the basis of (1) waiver and forfeiture; (2) equitable and promissory estoppel; and (3) equitable tolling as a result of the debtor's assurances and actions.

The United States Supreme Court has made clear that the Federal Rules of Bankruptcy Procedure do not create or withdraw federal jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004). The deadlines contained in the Rules are not dispositive as to the court's ability to act and are simply "claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate." *Id*. at 454 (discussing Rule 4004(a)). "A time limit not prescribed by Congress ranks as a mandatory claim-processing rule, serving 'to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. ___, 138 S. Ct. 13, 17 (2017) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). A debtor may raise the issue of untimeliness under Rule 4004 any time before the bankruptcy court reaches the merits of the creditor's objection to discharge. *Kontrick* at 447.

The Eighth Circuit's Bankruptcy Appellate Panel has instructed courts how to deal with untimely requests for extensions of time, which nevertheless permit a movant to exercise its defenses of waiver, estoppel, and equitable tolling:

> Federal Rule of Bankruptcy Procedure 4007(c) establishes a deadline for filing a complaint to determine dischargeability of a debt under 11 U.S.C. § 523(c) of 60 days after the first date set for the meeting of creditors. The rule permits the court to extend that deadline for cause. However, the motion for extension "shall be filed before the time has expired." Fed. R. Bankr. P. 4007(c).

---

[3] Under Bankruptcy Rule 7001, proceedings to object to a discharge or to determine the dischargeability of a debt are adversary proceedings. An adversary complaint is initiated by filing a complaint and serving summons. Under Rule 4004(a), a complaint objecting to discharge must be filed no later than 60 days after the first date set for the § 341 meeting. Under Rule 4007(c), a complaint objecting to discharge under §§ 523(a)(2), (4), or (6) likewise must be filed no later than 60 days after the first date set for the § 341 meeting. These deadlines may be extended for cause, provided the request is made before the deadline has expired. *See* Rule 4004(b)(1) and Rule 4007(c). Rule 9006(b)(3) permits enlargement of time under Rules 4004(b) and 4007(c) "only to the extent and under the conditions stated in those rules."

[4] Tomek and Delozier do not appear to have pursued grounds for objecting to the debtor's discharge under § 727. The evidence in the record indicates the parties focused on breach of fiduciary duty under § 523(a)(4) as the basis for excepting these debts from discharge. *See* Ex. A to the Motion to Approve Compromise and Enforce Settlement, at 2 (Fil. No. 52). Therefore, the court's discussion will center on Rule 4007.

Federal Rule of Bankruptcy Procedure 9006(b) governs enlargements of time in which to perform an act required or allowed under the rules. Rule 9006(b)(3) states, "The court may enlarge the time for taking action under Rule[ ] . . . 4007(c) . . . only to the extent and under the conditions stated in [that rule]."

As noted above, Rule 4007(c) permits an extension of time only when the request is filed before the time has expired. In this case, the request for extension was not properly filed before the deadline, so the court had no authority to grant the request. *See Palmer v. Nordin (In re Nordin)*, 299 B.R. 915, 917 (8th Cir. BAP 2003).

"Rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure establish time limits for filing complaints objecting to discharge of a debtor or to dischargeability of a debt. These rules are analogous to statutes of limitations and are strictly construed." *KBHS Broad. Co. v. Sanders (In re Bozeman)*, 226 B.R. 627, 630 (8th Cir. BAP 1998). However, Rules 4004 and 4007 are not jurisdictional and are subject to the defenses of waiver, estoppel, and equitable tolling. *Block v. Moss (In re Moss)*, 266 B.R. 408, 414 (8th Cir. BAP 2001), *aff'd*, 289 F.3d 540, 542 (8th Cir. 2002); *Landmark Cmty. Bank v. Perkins (In re Perkins)*, 271 B.R. 607, 611–12 (8th Cir. BAP 2002).

*LeGrand v. Harbaugh (In re Harbaugh)*, 301 B.R. 317, 320 (B.A.P. 8th Cir. 2003).

Those equitable doctrines of waiver, estoppel, and tolling "must be applied in a manner 'consistent with the manifest goals of Congress to resolve the matter of dischargeability promptly and definitively in order to ensure that the debtor receives a fresh start unobstructed by lingering doubts.'" *In re Julien*, No. BK10-82442-TLS, 2012 WL 2284153, at *1–2 (Bankr. D. Neb. June 18, 2012) (quoting *In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002), *aff'd on other grounds*, *Kontrick v. Ryan*, 540 U.S. 443 (2004)).

A.  Waiver

Tomek and Delozier argue the debtor waived his right to discharge these debts based on his acknowledgement over the course of the settlement negotiations that they are non-dischargeable. Waiver is the "intentional relinquishment or abandonment of a known right." *Reinard v. Crown Equip. Corp.*, 983 F.3d 1064, 1066 (8th Cir. 2020) (quoting *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. ___, 138 S. Ct. 13, 17 n.1 (2017)). *See also Omaha Police Union Local 101, IUPA, AFL-CIO v. City of Omaha*, 872 N.W.2d 765, 773 (Neb. 2015) (stating that a waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right). "To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part." *Mogensen Bros. Land & Cattle Co. v. Mogensen*, 952 N.W.2d 688 (Neb. Ct. App. 2020), *review denied* (Jan. 4, 2021) (citing *Omaha Police Union,* 872 N.W.2d at 773).

Under the facts stipulated to by the parties, the debtor did not waive his right to discharge these debts. That was the foundation of the parties' settlement discussions, but as explained above, a final agreement was not reached, so the debtor cannot be bound to a proposed waiver. As for the creditor's argument that extending the deadline to permit the parties to litigate dischargeability would cause the debtor no prejudice, it is beyond peradventure that arbitrarily granting an extension to let an adversary proceeding commence and proceed would assuredly cost the debtor significant time and money and impinge his fresh start.

> The purpose for requiring creditors to file objections to discharge or complaints to determine dischargeability within sixty days of the meeting of creditors is to further the "fresh start" goals of bankruptcy relief by requiring creditors to promptly join their exceptions to discharge of debt so a petitioning debtor will enjoy finality and certainty and relief from financial distress as quickly as possible.

*Industrial Fin. Corp. v. Falk (In re Falk)*, 96 B.R. 901, 905 (Bankr. D. Minn. 1989) (citation omitted).

### B.  Equitable estoppel

The creditors next argue that the debtor should be equitably estopped from asserting a statute of limitations defense. To prevail under this theory, Tomek and Delozier must prove six elements:

> (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel.

> *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831, 836 (1999) (citation omitted). "Under Nebraska law, the party asserting an estoppel, . . ., must prove each element by clear and convincing evidence." *Roeder v. Metro. Ins. and Annuity Co.*, 236 F.3d 433, 438 (8th Cir. 2001) (citing *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 515 N.W.2d 416, 422 (1994))." "[E]quitable estoppel turns on all the facts and circumstances of a particular case." *Id.* at 437-438 (citing *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794, 803 (1994)).

*Richards v. Rabo AgriFinance, LLC (In re Kip & Andrea Richards Family Farm & Ranch, LLC)*, 613 B.R. 699, 703–04 (B.A.P. 8th Cir. 2020) (footnote omitted).

"The first prong of this test . . . is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed." *Woodard v. City of Lincoln*, 588 N.W.2d 831, 836 (Neb. 1999).

*Woodard* involved a traffic accident where a city-operated bus struck and seriously injured a bicyclist. The city offered to and did make voluntary payments to the victim, Woodard, under a "letter of understanding" stating that if either side retained counsel for purposes of representation concerning the accident, the payments would end. The letter also stated it was not an admission of liability on the part of the city and it reserved Woodard's rights to claim damages in the future on account of the accident. The parties negotiated for three-and-a-half years to settle the matter, but were unsuccessful. Woodard then retained legal counsel and the city turned the affair over to its insurance carrier. At that point, the two-year statute of limitations was raised. Woodard argued that the city should be equitably estopped from raising the statute of limitations defense, based on the city's actions in inducing Woodard not to retain counsel and causing him to believe he could file a claim in the future notwithstanding any time limitations. The trial court granted summary judgment to the city, and the court of appeals affirmed.

The Nebraska Supreme Court affirmed in part and reversed in part, finding that summary judgment should not have been granted on the estoppel issue because the evidence gave rise to a reasonable inference that the city "intended to convey" to Woodard that his claim would be settled and letting him believe that he did not need to file a court petition, much less a timely one. The city's effort to subsequently rely on the statute of limitations after leading Woodard to believe otherwise satisfied the first element of the equitable estoppel test.

However, the court made clear that settlement negotiations should not ordinarily give rise to estoppel claims:

> "[T]he mere pendency of negotiations during the period of a statute of limitations, which are conducted in good faith with a view to ultimate compromise, is not of itself sufficient to establish an estoppel." *Turner v. Turner*, 582 P.2d 600, 603 (Wyo. 1978). However, ordinary settlement negotiations contain the implicit notion that if settlement is not reached, then litigation may be necessary. It is the City's conveyance of the impression that litigation would not be necessary that, if proved to the finder of fact, establishes the level of misrepresentation necessary for equitable estoppel.

*Woodard*, 588 N.W.2d at 837.

The evidence in this case does not establish that counsel for the debtor "lull[ed] his adversary into a false sense of security" and then tried to take advantage of that. At no point did the debtor tell the creditors litigation would not be necessary. In fact, during the months of negotiations, the parties stipulated to one earlier extension of the deadline to file a complaint. As of Friday, June 19th, the last business day before the extended complaint deadline expired, the emails indicate the debtor was under the impression the ball was in Tomek and Delozier's court, as their attorney said he would seek his clients' input on acceptable language for the default cure provision. While the creditors may have assumed the matter was "settled" but for finessing some terms, that does not excuse them from verifying the settlement in fact or from missing their deadline. There was no conduct on the part of the debtor that conveyed the impression the facts were anything other than they are, so equitable estoppel is inapplicable.[5]

### C. Promissory estoppel

The creditors alternatively argue that promissory estoppel should be applied to enforce the settlement.

> Recovery on a theory of promissory estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise. Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
>
> Under Nebraska law, the doctrine of promissory estoppel does not require that the promise giving rise to the cause of action must meet the requirements of an offer that would ripen into a contract if accepted by the promisee. Under this theory, the main focus is on reasonable reliance.

*Shadow Ridge Ltd. P'Ship v. Ryan (In re Estate of Ryan)*, 925 N.W.2d 336, 343 (Neb. 2019) (footnotes omitted).

> In Nebraska, a claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise. The promise need not be definite enough to support a unilateral contract, but it must be definite enough to show that the plaintiff's reliance on it was reasonable and foreseeable.

*Weitz Co., LLC v. Hands, Inc.*, 882 N.W.2d 659, 668 (Neb. 2016) (footnotes omitted).

---

[5] The remaining elements of equitable estoppel require findings of intent, knowledge, and reliance. Those factors are difficult, if not impossible, to ascertain without testimony from the parties themselves, rather than the attorneys. In any event, it is unnecessary to analyze them here in light of the court's finding on the first element.

- 11 -

Once again, the creditors' argument stretches this theory too far. Even assuming that the debtor made a promise to the effect that the matter was in fact settled, the creditors' reliance on such a promise, without more, in the face of the pending deadline was not reasonable or foreseeable. The creditors were obligated to take steps by the deadline to confirm – for themselves and for the court – that a settlement had indeed been reached. Casting blame on the debtor for their own misapprehension of the deadline is not a valid basis on which to resurrect the purported deal.

### D.   Equitable tolling

"As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

The law in the Eighth Circuit is well-settled that Rules 4004 and 4007 are analogous to statutes of limitation. *KBHS Broad. Co. v. Sanders (In re Bozeman)*, 226 B.R. 627, 630 (8th Cir. B.A.P. 1998). As such, they are subject to the defenses of waiver, estoppel, and equitable tolling. *Block v. Moss (In re Moss),* 266 B.R. 408, 414 (8th Cir. B.A.P. 2001).

The law is also well-settled that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, *supra*. Rather, the United States Supreme Court suggested that equitable tolling might be appropriate under the following limited circumstances: (1) when a claimant received inadequate notice; (2) when a motion for appointment of counsel is pending "and equity would justify tolling the statutory period until the motion is acted upon"; (3) where the court has led the plaintiff to believe that she had done everything required of her; or (4) when affirmative conduct on the part of the defendant has "lulled the plaintiff into inaction." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

None of those limited circumstances exist here. The movants do not claim they received inadequate notice of the extended deadline, and neither the appointment of counsel nor advice from the court are applicable here. At most, Tomek and Delozier can, and do, argue that the debtor's conduct and statements of his attorneys throughout the email chain that he (1) was "good with" the terms of settlement as proposed thus far, (2) conceded that the debts were non-dischargeable, and (3) purchased a life-insurance policy for the benefit of the creditors as part of the settlement lulled them into inaction by letting them think the matter was in fact settled.

Perhaps there are situations where those actions could be said to have caused a plaintiff to sleep on his or her rights, but that situation does not exist here, under the facts as presented. The parties conducting the settlement negotiations are sophisticated and experienced attorneys who are or should be familiar with court procedural rules and requirements, as well as with the occasional vagaries of law practice. They had previously sought and obtained one earlier extension of the deadline to file a discharge complaint, so they surely were aware of the significance of the deadline. Notwithstanding that knowledge, the emails don't even mention the impending deadline. There is mention of a hearing and evidence deadline on a motion to avoid lien, but no mention of the

pending complaint deadline. Further, as discussed above, it does not appear to this Court that the matter was in fact settled as of Friday, June 19th, but even if it were, the rapidly approaching deadline for filing an adversary proceeding should have prompted the creditors to either ensure that the settlement was documented for the court or a complaint was timely filed. Tolling is appropriate only in rare cases with "exceptional circumstances truly beyond the plaintiff's control," *Jenkins v. Mabus*, 646 F.3d 1023, 1029 (8th Cir. 2011), and no such exceptional circumstances are apparent here. Rather, this looks like a "garden variety claim of excusable neglect" through failure to monitor, meet or extend the filing deadline, which cannot be cured through equitable tolling. *Irwin v. Dep't of Veterans Affairs*, *supra*.

To the extent the creditors assert the debtor would suffer no prejudice from belatedly extending the deadline in order to let the parties do what they intended to do, the law precludes it. "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin Cty. Welcome Ctr.* at 151-52.

Simply put, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Id.* at 151.

## IV. Conclusion

Both sides to this dispute worked diligently and in good faith to reach a settlement. Those efforts got close, but never reached the finish line. The problem was simply the failure to recognize the approaching (and previously extended) complaint filing deadline. As noted above, the parties stepped up their discussions in the week before the June 21st deadline. From the record, it seems likely that the terms could have been finalized by that deadline had it been raised either as a carrot or a stick. Instead, it was not even mentioned. The hard truth here is that the obligation to either file an adversary proceeding or ensure the matter was timely settled belonged to the creditors. The debtor correctly points out that the deadline was not his to track. This was simply a failure by the movants to account for the June deadline and to act accordingly. Their effort to convince the court to shift the blame is unavailing. In summary,

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S. Ct. 2486, 2497, 65 L. Ed. 2d 532 (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Baldwin Cty. Welcome Ctr.* at 152.

IT IS ORDERED: The amended motion by creditors Charles S. Tomek and Tadd Delozier to extend time to object to discharge, challenge the dischargeability of specific debts, and file an adversary proceeding (Fil. No. 48) is denied. The motion by Tomek and Delozier to approve compromise and enforce settlement (Fil. No. 52) is denied.

DATED: February 2, 2021

BY THE COURT:

/s/Thomas L. Saladino
Chief United States Bankruptcy Judge

Notice given by the Court to:
    John A. Lentz
    *Michael W. Milone
    *David J. Koukol
    *Tyler A. Masterson
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.